And we'll move to our sixth case, Emmanuel Baptist Church v. City of Chicago. Mr. Mock. Good morning, Your Honor. May it please the court, Your Honor's counsel, this case is about two things. Attorney's fees and parking. And parking was the number one objective of this church from the beginning so they could buy a building and use it. And the obstacle was unconstitutional restriction on parking. There are a bunch of things that are agreed. The parties agree that the plaintiff church is the prevailing party. There's no dispute that the original fees requested were $680,000 and the court reduced those to a load star of $476,000. There's no dispute that the district court reduced the load star by 50% then. So there was a 30% reduction and then a 50% reduction to $238,000 for lack of success based on lack of monetary success. There's nobody's disputing the load star here. There's no appeal by either party. And there's no dispute that the Hensley v. Eckhart decision and its progeny decide this case and are governing. The church and the district court both agreed that all the disallowed damages were what Hensley and the case law called are related claims. They're not unrelated and Hensley says if they're related claims they're compensable even though they're not successful. And this is where the court in Australia, it's on page 16. Hold on, Mr. Mark. Hold on. Hold on. Okay, Judge Rovner, go ahead. Thank you. I take your point that because all the church's various legal theories were focused on the same course of wrongful conduct by the city, we shouldn't be talking about multiple claims and trying to parse out which claims or legal theories succeeded and which did not. But it seems to me that the district court did not do any such parsing and instead focused on the church's limited degree of success in terms of proving its damages. It wasn't that entirely appropriate and within the court's discretion. I'm sorry, Your Honor. I've been trying to hear and I just did not hear all of what you said, so I'm hesitant to respond. Oh, dear. Well, all right. I don't think that the court parsed the multiple claims. I think she focused on the church's limited degree of success That's correct. So isn't that appropriate? Isn't that within her discretion? Yeah. Hensley says there's an exception, but the strong presumption is the lodestar is controlling and that was never disputed or discussed by the by the judge why why the lodestar strong presumption is ignored. And the court contradicted itself on page 16 and 17 of its opinion. It said we find that all of these claims were related, but there's an exception that applies that there was limited success. I agree that that's what the court did and I think the court was wrong. We think the court was wrong because the limited success is untrue. The church got its parking. It got its building. It got an award of damages that the city substantially burdened the church's ministry. So that was success. The court instead defined success as money and what we want this court to understand is this isn't a monetary issue primarily. The church is about getting a place to worship and allowing people to come together so they can worship God and hear the good news and that's that was their focus and the I'm very sympathetic to that Mr. Mock, but the request for injunctive relief was mooted by an ordinance passed by the city. Was it not? The ordinance was passed after the church was forced to rent what we have called the parking lot to nowhere some two blocks away that nobody ever used. Church had to spend a lot of money on it and the city figured out according to its understanding of the ordinance that this was legal and so we they gave us a second letter. Initially the church got a letter before they moved in saying it was all compliant with the code then they changed the position then the church when it rented this parking lot to nowhere got a second letter saying zoning is okay and the church was able to go ahead and get a mortgage and buy the property. So the ordinance was not changed until after. As I understand it, the parking changes that ultimately relieved the church of the need to lease parking were part of a long-running series of parking reforms that began in 2013 and continue to this day. So what in the record supports the notion that it is this suit that this suit had any impact on what the city has done in terms of parking reforms? What is in the record to show that the city released the parking? No, that this suit had an impact on what the city did. Well, of course is the obvious thing that we litigated for several years and everybody in the planning department must have been aware of this lawsuit. Several were deposed, several testified at trial, so they knew all about it. Now, did it impact? I think we put it in the brief. Only the first mayor Daley would know every thought of the alderman because the alderman ultimately made the decision. Did the city independently decide? Possibly. Did they follow the church's constitutional argument? We think so, but we can't prove it one way or another, nor can they. This court just has to look at the circumstances. We fought and fought to get rid of the parking restriction, and after they did the damage by requiring the church to rent this parking lot from nowhere or to nowhere, then they changed the ordinance. We're glad they changed the ordinance, but it shouldn't excuse them from responsibility for keeping the church from being able to buy its building for three years. Sir, you're well into your rebuttal time. Do you want to save some time for rebuttal? Yes. Okay. Thank you. You're welcome. All right, Ms. Tisher. Good morning, Your Honors. May it please the court? I would like to begin by addressing a couple of the points made by plaintiff. First of all, plaintiff is wrong that the city's amendment to its transit-served location ordinance had anything to do with this lawsuit. That amendment had been in the works for years, and it applies to all non-residential units, uses located near certain bus routes, not just religious uses, and it was meant to encourage transit-oriented development, not specifically to ease parking restrictions on religious uses like churches. But even so, you know, this was a voluntary action by the city, not one that plaintiff obtained judicially, and a plaintiff is not considered a prevailing party for purposes of attorney's fees where the defendant voluntarily changed its conduct, and the Supreme Court has been very clear about that in Bucket and Board and Care Home, and this court has recognized that as well. I would like to also comment on plaintiff's understanding of Hensley. Plaintiff's discussion of Hensley and that framework is flawed. Whether a lawsuit is characterized as a single claim or multiple related claims, the inquiry is exactly the same, and that is what is the degree of success, and in either case where the success is limited, the district court has broad discretion to make an across-the-board reduction. Hensley makes very clear that the proper focus is whether the plaintiff achieved a level of success that makes the hours expended a satisfactory basis for a fee award, and where a plaintiff achieves only partial or limited success, the full Lodestar may be excessive. In this case, the district court determined that plaintiff's success was modest at best. As it noted, it lost three of four claims on summary judgment and proved less than five percent of the damages it sought, and so it was fully within the court's broad discretion to reduce the Lodestar to reflect this limited success. Essentially, plaintiff asks this court to second-guess the district court's assessment that a 50% reduction was reasonable, but that is not this court's role. It is clear that the district court considered all the proper factors and explained its reasoning, and there was no abuse of discretion. If there are no further questions, we ask this court to affirm the judgment of the district court. Okay, thank you. Mr. Mock, do you have anything to add? Thank you, Your Honor. The city does not deny that all the claims were related. They just say a limited success requires an exception. I've explained why we think we've succeeded, and I want to add one other factor which the courts have looked at, and that is social impact. This church is typical of many inner-city churches. There are thousands in this country, and when they are in the cities, they have parking problems. They have parking restrictions, and these churches minister to people coming immigrants, minority religions, minority races, and they struggle, and they're fighting against City Hall, which in this case is a typical example. They're zoned for a church, and then the city writes a letter saying we don't think we're sure that we want a church in this area. That's from the zoning administrator, even though the City Council has said otherwise. So you have a precedent here that can help people all over the country integrate and learn English and become part of our society instead of being opponents or excluded. So we think that that is a good measure of success in addition to the other localized success, which is just to get this building and get the parking resolved. Okay, thank you, Mr. Moak. We'll leave it there, and we'll take the case under advisement.